UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

_____
IN RE:                                                      )
                                                                   )
KIM ZIEGELMAYER                                 )     BANKRUPTCY CASE NO. 17-11357
                                                                   )
    DEBTOR.                                             )
----------------------------                                 )
                                                                   )
WILLIAM K. HARRINGTON                      )
UNITED STATES TRUSTEE                      )
  FOR REGION ONE,                                )
                                                                   )
        PLAINTIFF                                        )
                                                                   )
    VS.                                                        )     ADVERSARY NO.
                                                                   )
KIM ZIEGELMAYER                                 )
334 WATERMAN AVENUE                        )
SMITHFIELD, RI 02917                            )
                                                                   )
        DEFENDANT                                    )
_____)

COMPLAINT FOR REVOCATION OF DISCHARGE

Plaintiff William K. Harrington, United States Trustee ("U.S. Trustee"), by and through his duly authorized counsel, brings this action pursuant to 11 U.S.C. § 727(d) for revocation of the discharge previously granted to Kim Ziegelmayer (the "Defendant" or "Debtor").

In support of this complaint, the U.S. Trustee respectfully states:

JURISDICTION & VENUE

1.    This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  Pursuant to 28 U.S.C. §157(b)(2)(J) this matter is a core proceeding.  Venue is proper in this

Court pursuant to 28 U.S.C. § 1409. Plaintiff has standing to pursue this Adversary Proceeding pursuant to 11 U.S.C. §§ 307 and 727(d).

## THE PARTIES

2. Plaintiff is the U.S. Trustee for Region 1, duly appointed pursuant to 28 U.S.C. § 581(a)(1).

3. Defendant is Kim Ziegelmayer an individual with a last known address at 334 Waterman Avenue, Smithfield, RI 02917 ("Defendant").

## FACTUAL BACKGROUND

4. Sunflower Real Estate, LLC is a Rhode Island LLC formed on or about October 21, 2014 ("Sunflower").

5. Lynda L. Glynn ("Ms. Glynn") is and has been the sole member of Sunflower since its formation.

6. Ms. Glynn formed sunflower at the direction of the Defendant.

7. The Defendant directed Ms. Glynn to form Sunflower so there would be a separate legal entity for the Defendant to start a new business venture of buying and flipping real estate.

8. Upon information and belief, Sunflower was capitalized with an initial investment of $200,000 in October 2014. A friend of the Defendant, Mr. Mauro Poletti, of New South Wales, Australia, made the initial investment.

9. The Defendant did not become a member of Sunflower to conceal her financial transactions from her divorce proceeding and her contemplated filing for bankruptcy.

10. At all times relevant to this complaint Ms. Glynn was the only person with signature authority on the checking account of Sunflower maintained at Coventry Credit Union.

2

11. Ms. Glynn was authorized by the Defendant to make only small administrative payments on behalf of Sunflower. Sunflower compensated Ms. Glynn $35 for her accounting work and was to pay Ms. Glynn real estate sales commissions on the sales of real estate.

12. Ms. Glynn signed Sunflower checks in blank and provided them to the Defendant.

13. The Defendant completed the pre-signed Sunflower checks and used some of them to pay herself.

14. The Defendant used the Sunflower pre-signed checks to pay herself monthly compensation of $2,500.

15. The Defendant used the Sunflower pre-signed checks to make transfers from Sunflower to herself totaling $68,825 from January 2017 through June 30, 2017.

16. The January to June 2017 transfers of $68,825, include the Debtor's regular monthly compensation, other checks made payable to the Defendant, and a check made payable to an account of the Defendant at TD Ameritrade for $6,500.

17. At times relevant to this complaint, the Defendant had access to the Sunflower bank accounts using online access including the ability to move funds between the savings and checking account. The Defendant used her online access to the Sunflower bank accounts to facilitate her distributions from Sunflower.

18. At times relevant to this complaint, the Defendant had access to the Sunflower bank accounts by use of a debit card.

19. Ms. Glynn did not have a debit card to access the Sunflower bank accounts.

20. The Defendant had discretion over the issuance of checks and the use of the debit card for Sunflower's bank account.

21. The Defendant used the Sunflower bank accounts for her personal banking needs.

22. The Defendant, on or about May 2, 2016, received a $50,000 check from her mother made payable to cash.

23. The Defendant delivered the $50,000 check to Ms. Glynn to have it deposited into the Sunflower savings account.

24. The Defendant caused the $50,000 check to be deposited into the Sunflower bank account to conceal and protect it from her creditors and in anticipation of filing bankruptcy.

25. The Defendant used the assets of Sunflower to pay some of her personal living expenses.

26. Upon information and belief and subject to further discovery, the Defendant used the Sunflower bank account to pay her divorce attorney.

27. Upon information and belief and subject to further discovery, the Defendant used the Sunflower bank account to pay her bankruptcy attorney.

28. The Defendant used the assets of Sunflower for personal travel with her children to Arizona.

29. On December 24, 2014, Sunflower bought the property located at 334 Waterman Ave, Smithfield, RI 02917 ("Waterman Ave").

30. Sunflower paid to rehabilitate the Waterman Ave property.

31. The Waterman Ave property is a duplex and the Defendant has lived in one of the two units rent-free from approximately July 2016 to the present.

32. A tenant occupies the second unit of the Waterman Ave property. The tenant delivers the rent payments to the Defendant.

33. Sunflower owns a car, which is used exclusively by the Defendant.

34. As of October 16, 2018, the Defendant continues to use the car owned by Sunflower.

35.  The Defendant enjoyed substantially all of the attributes of ownership of Sunflower and its assets, but for legal title, in an effort to maintain her lifestyle and shield assets from the reach of her creditors.

36.  The Defendant filed a voluntary petition to commence this case on August 4, 2017 ("Petition Date").

37.  The Defendant as of Petition Date had an interest in Sunflower.

38.  The Defendant did not disclose her interest in Sunflower in her Schedules or Statements filed in her bankruptcy case.

39.  On October 5 and 16, 2018, the Defendant provided deposition testimony in a civil action pending in Providence County Superior Court. This deposition was taken in connection with a lawsuit brought by Mr. Poletti against Ms. Glynn, Sunflower and others for breach of contract, fraud, conversion and other counts in connection with Sunflower.

40.  At her deposition on October 5, 2018, the Defendant testified as follows at page 32:

```
 5  Q.   Is there a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 6       the LLC?   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 7       A. There we▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 8       divorce tha▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 9       the company▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10  Q.   What were t▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11       A. It was m▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```

41.  Also at the October 5, 2018 deposition, the Defendant testified as follows at page 35:

```
13   Q.   The circums▇
14        the potenti▇
15        is that what▇
16   A.   I'm sayi▇
17   Q.   Is there any▇
18        a member of ▇
19   A.   That was ▇
```

42.  At her deposition on October 16, 2018 the Defendant testified as follows at page 93:

```
Q.   When Sunflower Realty was being set up, what was
     it about the circumstances of your divorce or in
     your life at that time that kept you from being a
     member of the LLC?
A.   I had planned on declaring bankruptcy at some
     point in the future.  So I believed that it was in
     my interest related to that to not hold assets in
     my name.
Q.   And eventually, you did file bankruptcy; is that
     correct?
A.   That's correct.
Q.   When was that?
A.   August 4, 2017.
```

43.  Defendant's interest in Sunflower was property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

44.  Defendant's interest in Sunflower bank accounts was property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

45.  Defendant's interest in real estate owned by Sunflower was property of her bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

46.  On August 4, 2017, the Defendant filed her Schedules of Assets and Liabilities in the Chapter 7 Case under the pains and penalties of perjury. Doc. #1.

47. The Defendant knowingly and fraudulently failed to disclose her interest in Sunflower in her Schedules and Statements

48. The Defendant knowingly and fraudulently failed to disclose her interest in Sunflower bank accounts in her Schedules.

49. The Defendant knowingly and fraudulently failed to disclose her interest in real estate owned by Sunflower in her Schedules.

50. On August 4, 2017, the Defendant filed her Statement of Financial Affairs in the Chapter 7 Case under the pains and penalties of perjury. Doc. #1, pages 38-44.

51. The Defendant knowingly and fraudulently failed to disclose her income and transfers from Sunflower in her Statement of Financial Affairs.

52. On October 4, 2017 the filed her Form 122A ("Means Test") under the pains and penalties of perjury. Doc. #5.

53. The Defendant at line 3 of her Means Test knowingly and fraudulently failed to disclose, "amounts from any source which are regularly paid for household expenses."

54. The Defendant knowingly and fraudulently failed to disclose household expenses regularly paid by Sunflower on her Means Test.

55. Charles Pisaturo ("Chapter 7 Trustee") was appointed Chapter 7 Trustee in this case.

56. A meeting of creditors pursuant to 11 U.S.C. § 341 was held and concluded on September 12, 2017, at which the Defendant testified under oath after being duly sworn.

57. At the meeting of creditors, the Defendant was asked to verify her personal property listed on Schedule B. The Defendant testified under oath that she had no other assets other than those listed on Schedule B.

58. The Defendant knew of her interest in Sunflower and knowingly and fraudulently failed to disclose it at her meeting of creditors.

59. The Defendant knew of her interest in Sunflower bank accounts and knowingly and fraudulently failed to disclose it at her meeting of creditors.

60. The Defendant knew of her interest in Sunflower real estate and knowingly and fraudulently failed to disclose it at her meeting of creditors.

61. On December 8, 2017, an Order Discharging Debtor entered from this Court pursuant to 11 U.S.C. § 727(a) of the Bankruptcy Code.

62. The U.S. Trustee was unaware of the Defendant's fraud until after the entry of the discharge.

63. The U.S. Trustee, the Chapter 7 Trustee, and the creditors in this matter justifiably relied on the Defendant's knowing and fraudulent misrepresentations and omissions of material facts.

64. Ms. Glynn on or about September 26, 2017, delivered a check purporting to be the remainder of the funds on hand in Sunflower for $34,230.59 to the Defendant.

65. The September 26, 2017 check for $34,230.59 was made payable to Attorney Tudino. Upon information and belief, Attorney Tudino represents Mr. Poletti.

66. The Sunflower proceeds delivered to Attorney Tudino were deposited into MP Revocable Trust.

67. The Defendant testified at her October 16, 2018, deposition that she has access to the MP Revocable Trust account.

## COUNT I
## REVOCATION OF DISCHARGE UNDER 11 U.S.C. § 727(d)(1)

68. The U.S. Trustee incorporates the allegations contained within all of the preceding paragraphs of this complaint as if fully set forth herein.

69. The Defendant's discharge was obtained through the fraud of the Defendant.

70. The U.S. Trustee did not know of the fraud until after the granting of such discharge.

71. This fraudulent conduct warrants revocation and denial of the Defendant's discharge pursuant to 11 U.S.C. § 727(d).

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an Order:

A. Revoking the discharge granted to the Defendant under an Order of this Court dated December 8, 2017, pursuant to 11 U.S.C. § 727(d); and

B. Granting the U.S. Trustee such other and further relief as is just and equitable.


December 6, 2018                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                    United States Trustee for Region One

                            By:     /s/  Gary L. Donahue
                                    Assistant U.S. Trustee
                                    U.S. Department of Justice
                                    U.S. Courthouse Suite 431
                                    One Exchange Terrace
                                    Providence, RI 02903
                                    Tel: (401) 528-5552
                                    Gary.L.Donahue@usdoj.gov